***********
Upon review of all of the competent evidence of record with references to the errors assigned and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, the Full Commission AFFIRMS the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by parties as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. An employer-employee relationship existed between plaintiff and defendant-employer on February 10, 1999.
3. Plaintiff's average weekly wage was $400.00.
4. Plaintiff is not currently employed by defendant-employer.
5. The parties stipulated into evidence the following:
a. Stipulated Exhibit 1 — medical records, 54 pages; and
b. Stipulated Exhibit 2 — Forms 18, 33, 33R from the alleged accident of February 10, 1998.
6. The issue for determination is whether plaintiff sustained an injury by accident on February 10, 1999 as alleged, and whether he suffered any disability as a direct result of an alleged injury by accident on February 10, 1999.
 ***********
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing in this matter, plaintiff was 31 years old and a high school graduate. Plaintiff was employed by defendant-employer off and on for several years. He worked on a crew that replaced/installed different types of glass. During plaintiff's last period of employment with defendant-employer, he worked from approximately the spring of 1998 until approximately February 17, 1999.
2. During this same time period that plaintiff worked for defendant-employer, he also operated his own gutter and siding business installing gutters after getting off work for defendant-employer and on weekends.
3. Plaintiff has a history of back problems and injuries dating back to November 1992.
4. Plaintiff complained of back pain and problems while constructing a storage shed for his personal residence in the summer of 1998. Plaintiff unloaded gravel, poured cement and installed poles. Plaintiff wore a back brace to work off and on following this incident at home and missed various days or parts of days of work due to general back problems and complaints. As a result of his non-work-related back problems from the summer of 1998, plaintiff was placed on light duty work with defendant — employer and remained on light duty throughout his employment.
5. On November 3, 1998, plaintiff reported to his family physician Dr. Halm, an internist, that he had experienced a three-week history of lower back pain that was worsening. Plaintiff reported pain into his left leg but no acute injury. Dr. Halm diagnosed muscle pain and a possible early disc problem.
6. On November 16, 1998, plaintiff reported to Dr. Sexton, a chiropractor, that he was experiencing pain and numbness in his lower back that was radiating to both legs down to the knee. Plaintiff indicated that he first noticed the pain on October 16, 1998. Plaintiff also reported to Dr. Sexton that he had sustained a back injury eight years ago when he fell at work and sustained a "possible chipped disc".
7. Dr. Sexton referred plaintiff to Dr. Guarino. Dr. Guarino, an occupational medicine specialist, examined plaintiff on February 10, 1999. Plaintiff told Dr. Guarino that the onset of lower back pain with radiation down the left leg began around Christmas in 1998. This lower back pain with radiation down the left leg bothered plaintiff for a period of three to four weeks. Plaintiff indicated that his lower back pain and radiating pain down his legs had recurred "over the last week", and that he had once again entered chiropractic treatment. Dr. Guarino diagnosed plaintiff with lower back pain with radiculopathy and could not rule out a disc herniation. Plaintiff did not report to Dr. Guarino that he experienced a specific injury on February 10, 1999 that resulted in "twisting" and a "pop" to his lower back, while he was moving glass on a dolly.
8. When Dr. Sexton referred plaintiff to Dr. Guarino on February 10, 1999, his referral letter stated that plaintiff was experiencing low back pain and left leg pain but that there had been "no trauma". In a medical report by Dr. Sexton dated February 9, 1999, the date of the onset of plaintiff's left leg pain and back pain was listed as February 2, 1999.
9. Plaintiff returned to see his family physician, Dr. Halm, on February 17, 1999. Plaintiff reported that he had lower pain at work after lifting, and that he had felt a "pop". However, plaintiff did not relate a lifting incident involving a "pop" to any occurrence on February 10, 1999. Dr. Halm referred plaintiff to Dr. Botero, a neurosurgeon, for a surgery consultation.
10. Dr. Botero examined plaintiff on February 22, 1999. Plaintiff told Dr. Botero that he had inured his back at work on November 7, 1998 when he was lifting glass and developed a sudden onset of back pain. Plaintiff claimed that the pain was so severe that he had to sit down immediately and eventually leave work that day. Plaintiff reported that three co-workers witnessed this onset of pain. Plaintiff indicated that he eventually returned to work but was unable to do his job. He told Dr. Botero that when he returned to work the pain was getting worse and that as of February 22, 1999 it was radiating down to the left foot causing weakness and tingling.
11. On February 22, 1999, plaintiff signed a medical questionnaire for Dr. Botero, his surgeon, on which he indicated that he was injured on the job lifting glass, and that the incident occurred on November 7, 1998. Plaintiff indicated at that time that he was not filing for workers' compensation. Dr. Botero diagnosed a left L5-S1 herniated disc and surgery was performed on March 26, 1999.
12. Following his surgery, physical therapy was prescribed for plaintiff. On May 3, 1999, plaintiff told the physical therapist that he sustained an injury on the job on November 3, 1998 when he was lifting a sheet of glass and felt his back pop. Plaintiff participated in physical therapy in April, May and June of 1999. On June 25, 1999, plaintiff was discharged from physical therapy after making excellent progress. Plaintiff was released to return to work with no specific restrictions at that time. Plaintiff was released to return to work at his former job, but as of June 25, 1999, he was already working at his siding and gutter business.
13. Plaintiff did not return for any follow up treatment with Dr. Botero or any physical therapy, and did not show up for his scheduled appointment with Dr. Botero on July 1, 1999. Plaintiff has not sought any treatment for back complaints since he was released from physical therapy in June 1999.
14. Plaintiff continued to operate his gutter and vinyl siding business in 1999 and 2000. Plaintiff received $42,562.00 in gross receipts for gutter and vinyl siding work in the calendar year 1999. In 2000, plaintiff reported $48,403.00 in gross receipts for gutter and siding work. Plaintiff was listed as the only employee of the gutter and siding business on his tax returns.
15. On November 28, 2000, plaintiff obtained work with CKS Packaging and has continued to work for CKS Packaging from late November of 2000 to the date of the Deputy Commissioner hearing except for a limited period of time. In his application for employment with CKS Packaging, plaintiff listed his last three employers as "self". Plaintiff is earning more in wages for CKS Packaging than he earned for defendant-employer.
16. Plaintiff did not report his alleged February 10, 1999 injury by accident or file a Form 18, Notice of Accident, to the employer until he filed a Form 18 dated April 10, 2000. In this Form 18, plaintiff claimed that he injured his back on February 10, 1999. He alleges that the February 10, 1999 injury was caused when "a dolly twisted while standing on it causing back to twist and pop".
17. At the same time plaintiff filed his Form 18 for his alleged February 10, 1999 accident, plaintiff filed a Form 18, Notice of Accident, to employer dated April 10, 2000 wherein he claimed that he injured his low back while working for defendant-employer on November 3, 1998. Plaintiff filed a Form 33, Request for Hearing, dated November 15, 2000 regarding his alleged injury of November 3, 1998. This claim was settled at a mediated settlement conference, and plaintiff has received settlement money as a result of that claim pursuant to a compromise settlement agreement.
18. At the same time that plaintiff filed his Form 33 for his alleged November 3, 1998 low back injury, plaintiff also filed a Form 33, Request for Hearing, regarding his alleged back injury of February 10, 1999 which is the subject of this claim.
19. At the hearing before the Deputy Commissioner, plaintiff recanted his statements regarding the cause of his injury as stated in the Form 18. Plaintiff testified that he was injured on February 10, 1999 as he was assisting co-workers move a piece of glass, his back ultimately twisted and he felt a "pop" in his back. He denied that he had ever injured his back as described in the Form 18 that he signed.
20. Plaintiff never informed any of his health care providers that he sustained a specific new injury on February 10, 1999 when he twisted his back and felt a sudden "pop" in his lower back while moving a piece of glass on a dolly.
21. Plaintiff never mentioned any "popping" incident or twisting incident that occurred on February 10, 1999 to Dr. Botero, his treating neurosurgeon. Dr. Botero performed surgery on plaintiff on March 26, 1999. Dr. Botero performed a detailed evaluation and examination of plaintiff on February 22, 1999 and before the surgery. At no time did plaintiff indicate that he injured his back on February 10, 1999, or any other date in February 1999. Rather, plaintiff told Dr. Botero that he inured his back at work on November 7, 1998.
22. Plaintiff gave numerous contradictory versions of when he injured his back and when his pain started. The Deputy Commissioner did not find credible plaintiff's testimony concerning an injury by accident on February 10, 1999. Based upon the totality of the lay and medical evidence of record, the Full Commission declines to reverse the credibility ruling of the Deputy Commissioner who had an opportunity to observe plaintiff and hear the testimony of all the witnesses.
23. The Full Commission finds plaintiff failed to prove by the greater weight of the evidence of record that he sustained an injury by accident or specific traumatic incident of the work assigned arising out of and in the course of his employment with defendant-employer on February 10, 1999.
 ***********
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff did not sustain a compensable injury by accident arising out of in the course of his employment on February 10, 1999. N.C. Gen. Stat. § 97-2(6).
2. Therefore, plaintiff is not entitled to benefits under the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-29.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Plaintiff's claim is, and under the law, must be DENIED.
2. Each side shall pay his own costs.
This the 24th day of February 2004.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
LKM/mb